#26448-DG

**2012 S.D. 69**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

CHEYENNE RIVER SIOUX TRIBE,            Petitioner,

v.

THE HONORABLE JEFF W. DAVIS,
PRESIDING JUDGE OF THE SOUTH
DAKOTA SEVENTH JUDICIAL CIRCUIT,       Respondent.

* * * *

ORIGINAL PROCEEDING

* * * *

DANA L. HANNA
Rapid City, South Dakota            Attorney for petitioner.

NATHAN R. OVIATT of
Goodsell Quinn, LLP
Rapid City, South Dakota            Attorneys for respondent
                                    The Honorable Jeff W. Davis.

GLENN A. BRENNER
Pennington County State's Attorney

PATRICK GRODE
Pennington County Deputy State's Attorney
Rapid City, South Dakota            Attorneys for respondent
                                    State of South Dakota.

* * * *

                                    SUBMITTED ON
                                    AUGUST 31, 2012
                                    OPINION FILED **10/10/12**

#26448

GILBERTSON, Chief Justice

[¶1.]     This is an original proceeding for a writ of mandamus or prohibition commenced by the Cheyenne River Sioux Tribe (Tribe) against the Honorable Jeff W. Davis, Presiding Judge of the Seventh Judicial Circuit.[1]  We dismiss the application for a writ.

**Facts and Procedural History**

[¶2.]     Three unattended Native American children, ages sixteen, twelve, and three, were taken into custody from their residence by the Rapid City Police Department in the early morning hours of July 6, 2012.  Oldest child was found intoxicated and suffering from seizures.  Oldest child was hospitalized while the two younger children were placed into foster care.

[¶3.]     On the morning of July 6, a specialist for the South Dakota Department of Social Services (DSS) notified Tribe as to the custody of the children. State filed a petition for temporary custody and the forty-eight hour temporary custody hearing was held before Judge Davis at approximately 1:30 p.m. on July 9, 2012.[2]

---

1.     In beginning this action, Tribe failed to comply with SDCL 15-25-2 requiring an application to this Court for permission to commence original proceedings and for this Court to fix the procedures to be followed therein.  In view of the importance of the questions presented, however, we waive the application requirement in this instance.

2.     SDCL 26-7A-15 requires a temporary custody hearing when a child is taken into temporary custody.  The hearing must be held within forty-eight hours if the child is an apparent abused or neglected child.  *Id.*  "At the temporary custody hearing the court shall consider the evidence of the need for continued temporary custody of the child in keeping with the best interests of

(continued . . .)

-1-

[¶4.]     Mother appeared at the temporary custody hearing and requested the appointment of counsel. Tribe appeared through counsel and was permitted to intervene pursuant to the Indian Child Welfare Act (ICWA). Based upon State's petition, the police report and an ICWA affidavit from a DSS specialist, the court granted temporary custody of the children to DSS for sixty days. Citing ICWA, Tribe contested the custody order and sought to address the facts of the case and to present evidence. The court denied these efforts on the basis that it was a forty-eight hour hearing and mother did not yet have representation. The court did, however, indicate a willingness to revisit the situation later that day or when counsel for mother was available. The court also noted DSS's authority to return the children at any time if the situation was remedied or if continued custody was not warranted. The court also ordered DSS to consider and investigate mother's parents as a temporary placement. Tribe moved for a hearing in a week or in the "reasonably near future" to consider the factual basis for taking the children. The court denied the motion and the next hearing in the matter was scheduled for September 4, 2012.

[¶5.]     On August 9, 2012, a month after the temporary custody hearing, Tribe filed an application for a writ of mandamus or prohibition from this Court to compel a new temporary custody hearing or to arrest further proceedings in the case until a new hearing could be held. On August 15, this Court issued an order to

_____

(. . . continued)
  the child. The temporary custody hearing may be conducted telephonically when necessary as determined by the court." SDCL 26-7A-18. Temporary custody must be reviewed every sixty days. SDCL 26-7A-19(2).

show cause as to why the application should not be dismissed on the grounds that Tribe had a plain, speedy, and adequate remedy at law in the next hearing scheduled in the matter for September 4, 2012. Tribe and Judge Davis filed responses to the order to show cause. State submitted a response joining that of Judge Davis. Tribe also submitted an application for leave to file a reply to Judge Davis and a reply which we have considered in our review of this matter.

[¶6.] Tribe's response to the order to show cause and the other responses provided new information not previously conveyed or unclear in the original writ application. Within a week of the original temporary custody hearing, this case was reassigned from Judge Davis to Circuit Court Judge Mary P. Thorstenson. A hearing was held before Judge Thorstenson on July 16, 2012. At that hearing, Tribe's counsel advised that physical custody of middle child had been returned to her father who was her legal guardian. Accordingly, middle child was no longer a part of the case. Tribe's counsel also advised that Tribe had filed a motion to transfer youngest child's case to Tribal Court and that this was the primary purpose of the hearing. Mother's counsel made a motion to also transfer oldest child's case to Tribal Court. A discussion ensued as to whether oldest child would object to the transfer. The court ultimately approved the transfer of youngest child's case to Tribal Court, but continued the matter as to oldest child. Tribe's counsel then challenged oldest child's temporary placement and questioned the lack of adherence to relative placement preferences under ICWA. State pointed out the case was still in the "emergency custody time frame" and at the "initial phase[]." The case was then continued until the following week on July 23, 2012.

[¶7.] At the July 23 hearing, Judge Thorstenson indicated its purpose was to consider a continued request to transfer oldest child's case to Tribal Court. Tribe's counsel advised that Tribe would object to the transfer because of the absence of a plan for oldest child. Oldest child's counsel indicated oldest child would not object to a transfer and hoped for a placement with an aunt living on the Reservation. Tribe's counsel once again raised the issue of lack of compliance with ICWA placement preferences. At that point, the court advised that the proceedings were a continuation of the emergency hearing and that ICWA placement preferences were not yet applicable. However, the court did instruct DSS to look into the temporary placement of oldest child with her aunt.[3] This was the posture of the proceedings at the time Tribe filed its writ application.

## Analysis

[¶8.] Tribe continues to request a new temporary custody hearing in this matter in which the full panoply of ICWA requirements and standards would be applied. Tribe contends the lack of such a hearing violates its federal and state rights and that it is irreparably harmed by the lack of any mechanism to contest the trial courts' failure to fully follow ICWA at the temporary custody stage.

[¶9.] A review of pertinent authorities refutes Tribe's contentions. Courts in at least five different states have considered and rejected the argument that ICWA fully applies at the stage of a temporary or emergency custody proceeding. *See*

---

3. An affidavit from a DSS specialist submitted with the State's response to this Court's order to show cause indicates that oldest child was placed with her aunt on August 22, 2012.

*State ex rel. Juvenile Dep't v. Charles*, 688 P.2d 1354, 1358 (Or. Ct. App. 1984) (holding that emergency removal of a child is initially purely a state law matter not subject to all ICWA requirements); *D.E.D. v. State of Alaska*, 704 P.2d 774, 779 (Alaska 1985) (holding certain notice requirements under ICWA inapplicable to emergency custody proceedings or emergency hearings); *Matter of the Welfare of J.A.S.*, 488 N.W.2d 332, 335 (Minn. Ct. App. 1992) (holding the testimony of a qualified Indian expert was not required at the initial detention hearing in the case since that hearing was an emergency removal); *In re S.B. v. Jeannie V.*, 30 Cal. Rptr. 3d 726, 734-36 (Cal. Ct. App. 2005) (holding that not all provisions of ICWA apply to a detention/emergency removal hearing); *State ex rel. Children, Youth and Families Dep't v. Marlene C.*, 248 P.3d 863, 872-74 (N.M. 2011) (holding that New Mexico's ex parte and custody hearing stages are emergency proceedings to which the full requirements of ICWA do not apply).

[¶10.]    While the precise reasoning of these courts varies with the facts of each case and with the individual state's procedures, each decision ultimately rests upon § 1922 of ICWA providing in pertinent part:

> Nothing in this subchapter shall be construed to prevent the emergency removal of an Indian child who is a resident of or is domiciled on a reservation, but temporarily located off the reservation, from his parent or Indian custodian or the emergency placement of such child in a foster home or institution, *under applicable State law*, in order to prevent imminent physical damage or harm to the child.

25 U.S.C. § 1922 (emphasis added).  Moreover, notwithstanding the "temporarily located" language in this provision, four of the above courts have specifically recognized § 1922's applicability to *all* Indian children.  *See Charles*, 688 P.2d at

1358 n.2; *J.A.S.*, 488 N.W.2d at 335; *S.B.*, 30 Cal. Rptr. 3d at 735-36; *Esther V.*, 248 P.3d at 873. As succinctly reasoned by the California Court of Appeals on this issue:

> [I]t would make no sense to give a state *more* power to make an emergency placement of an Indian child who lives *on* a reservation than one who lives *off* the reservation. Thus, as the legislative history confirms, Congress intended this section to apply to emergency removals and placements of *all* Indian children. (H.R. Rep. No. 95—1386, 2d Sess., p.25 (1978), reprinted in 1978 U.S. Code Cong. & Admin. News, pp.7530, 7548.)

*S.B.*, 30 Cal. Rptr. 3d at 736 (emphasis original).

[¶11.]     Based upon § 1922 and ICWA's inapplicability to temporary or emergency custody proceedings under state law, both trial courts here appropriately rejected Tribe's invocation of ICWA and requests for a new temporary custody hearing conducted in full accord with ICWA.

[¶12.]     Tribe also asserts a violation of state law in the temporary custody hearing based upon an alleged lack of evidence of a need for temporary custody as required by SDCL 26-7A-18. Tribe ignores, however, that the temporary custody hearing proceeded on State's petition for temporary custody and the accompanying police report and ICWA affidavit from a DSS specialist. The report and affidavit set forth facts concerning the need for temporary custody. While these documents might not constitute evidence within the normal bounds of the Rules of Evidence, those rules are not applicable at a temporary custody hearing. *See* SDCL 26-7A-34 (stating that the Rules of Civil Procedure apply to adjudicatory hearings, but that all other juvenile hearings are to be conducted to inform the court of the status of

the child and to ascertain the child's history, environment, and condition); SDCL 26-7A-56 (stating that the Rules of Evidence apply to adjudicatory hearings, but that all other juvenile hearings are to be conducted under rules prescribed by the court to inform it of the status of the child and to ascertain the child's history, environment and condition). Therefore, the police report and affidavit provided sufficient evidence of a need for temporary custody to permit the trial courts to proceed here.

## Decision

[¶13.] "To prevail on a writ of mandamus or prohibition, Petitioners must show 'a clear legal right to performance of the specific duty sought to be compelled and the [respondent] must have a definite legal obligation to perform that duty.'" *H & W Contracting, LLC v. City of Watertown*, 2001 S.D. 107, ¶ 24, 633 N.W.2d 167, 175 (quoting *Willoughby v. Grim*, 1998 S.D. 68, ¶ 7, 581 N.W.2d 165, 168). *See also Gray v. Gienapp*, 2007 S.D. 12, ¶ 18, 727 N.W.2d 808, 812 (stating that, "[t]his Court has both constitutional and statutory authority to issue a writ of prohibition to 'arrest' or halt the proceedings of any tribunal or lower court under appropriate circumstances.").

[¶14.] Tribe has not made this showing with regard to the trial courts' duty to follow ICWA at a temporary custody hearing. In fact, nowhere in any of its pleadings has Tribe cited any case controverting the authorities on this point set forth above. Accordingly, Tribe is not entitled to mandamus or prohibition and its application for a writ is dismissed.

[¶15.] KONENKAMP, ZINTER, SEVERSON, and WILBUR, Justices, concur.

-7-