#30554, #30567-a-PJD
**2025 S.D. 10**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

PUFFY'S, LLC, a South Dakota
Limited Liability Company,

Applicant and Appellee,

v.

STATE OF SOUTH DAKOTA,
DEPARTMENT OF HEALTH,

Respondent and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SEVENTH JUDICIAL CIRCUIT
PENNINGTON COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE JOSHUA HENDRICKSON
Judge

* * * *

TAMARA D. LEE
HOWARD PALLOTTA
Special Assistant Attorney General
South Dakota Department of Health
Pierre, South Dakota

Attorneys for respondent
and appellant.

RYAN D. CWACH of
Birmingham and Cwach Law Offices, PLLC
Yankton, South Dakota

Attorneys for applicant
and appellee.

* * * *

ARGUED
OCTOBER 1, 2024
OPINION FILED **02/19/25**

#30554, #30567

DEVANEY, Justice

[¶1.] Puffy's, LLC was first in line on a waiting list to receive a state registration certificate from the South Dakota Department of Health (Department). The certificate was required in order to operate a medical cannabis dispensary in Rapid City (City). After the Department failed to issue the certificate, Puffy's brought a mandamus action in circuit court seeking an order compelling the Department to issue the certificate to Puffy's. The circuit court granted the writ of mandamus. The Department appeals, claiming the court lacked jurisdiction, or in the alternative, abused its discretion in granting the writ. We affirm.

**Factual and Procedural Background**

[¶2.] In 2020, South Dakota voters approved an initiated measure creating a state medical cannabis program. The measure, codified as SDCL chapter 34-20G, became effective July 1, 2021. The program is administered by the South Dakota Department of Health. Under the law, the Department is tasked with registering medical cannabis establishments, including dispensaries where authorized individuals may obtain cannabis and cannabis products for medical use. To operate, all medical cannabis establishments must obtain a state registration certificate from the Department upon application and payment of an application fee.[1] SDCL 34-20G-55.

---

1. In 2021, the Department set a non-refundable fee for an initial or renewal application at $5,000. *See* ARSD 44:90:03:17. The Department amended the rule in November 2023 to increase the fee to $5,310, and in 2024 raised it to the current amount of $9,000. *Id.*

-1-

[¶3.]     The law permits municipalities and counties to limit the number of medical cannabis establishments within their jurisdictions. In 2021, the City passed an ordinance that resulted in a limit of fifteen dispensaries that could operate in 2022. However, the City received applications for forty-seven dispensaries.

[¶4.]     The Department's administrative rules provide a process that addresses the situation where more medical cannabis establishments apply for a state registration certificate than are allowed by a particular local jurisdiction. In that event, the Department applies a scoring system to the applicants seeking to operate in the local jurisdiction. ARSD 44:90:03:15. If all the applicants receive equal scores, then under the Department's "tie-breaker" rule, ARSD 44:90:03:16, the Department conducts a random lottery drawing to determine the successful applicants that will be awarded the state registration certificate, and the remainder are put on a waiting list in the order determined by the lottery drawing. Under this rule, a successful state registration certificate recipient has one year to become operational "or the certificate is deemed void and must be awarded to the next applicant on the waiting list."[2] *Id.*

---

2.     ARSD 44:90:03:16, promulgated in 2021, has been amended. The version relevant to this appeal, with an effective date of November 22, 2022, reads, in part:

> Any establishment granted a certificate pursuant to this section must become operational within one year of the date of award or the certificate is deemed void and must be awarded to the next applicant on the waiting list. If the establishment granted a certificate pursuant to this section cannot become operational within one year, the establishment may submit to the

(continued . . .)

[¶5.]        All forty-seven of the Rapid City applicants also filed applications requesting state registration certificates from the Department.[3]  The applicants included Puffy's, a company seeking to operate medical cannabis dispensaries at various locations in Rapid City, including one at 3308 Campbell Street.  As required for this location, Puffy's filed an initial application for a state registration certificate and paid the $5,000 application fee to the Department.

[¶6.]        The Department applied the scoring system in ARSD 44:90:03:15 and all forty-seven applicants received identical scores.  On March 9, 2022, the

_____

(. . . continued)
> department, at least two weeks prior to the expiration of the certificate, written documentation of the efforts made by the establishment to meet the deadline.  The written documentation must include the action taken by the establishment to secure equipment and services necessary to become operational, and the reason why the establishment is unable to meet the deadline.  Upon a finding by the department that, despite the establishment's documented timely efforts to secure all equipment and services necessary to become operational, the establishment is unable to become operational by the certificate expiration date, the department may grant the establishment an extension of time by which the establishment must become operational.  The department may only grant an extension for one additional year from the date of expiration of the certificate.  No further extensions may be granted.  Establishments must comply with the requirements for renewal in § 44:90:03:02 regardless of the extension.
>
> The notification of any unsuccessful applicants must identify the department's decision as a final department action subject to the contested case procedures pursuant to SDCL chapter 1-26.

3.    As part of the Department's initial application process, applicants must submit information, including certification from the local jurisdiction that the applicant is in compliance with any local zoning requirements and has obtained any necessary local licenses or permits.  SDCL 34-20G-55; ARSD 44:90:03:01; ARSD 44:90:03:10; ARSD 44:90:03:11.

Department held a lottery drawing to determine which applicants would receive the fifteen state registration certificates for dispensaries in Rapid City. Puffy's was awarded several of the fifteen certificates and was also drawn as the first alternate position on the waiting list for its location at 3308 Campbell Street. Another applicant, Greenlight Dispensary, received three of the fifteen registration certificates.

[¶7.] In March 2023, Greenlight failed to meet the one-year operational requirement for one of its locations. The Department denied Greenlight's request for an extension on April 23, 2023, and Greenlight did not appeal the Department's final decision by way of a contested case pursuant to SDCL chapter 1-26. As a result, under ARSD 44:90:03:16, Greenlight's state registration certificate then became available. The Department did not, however, issue the certificate to Puffy's as the first alternate on the lottery drawing waiting list.

[¶8.] According to Puffy's, it made several requests for the certificate to be issued but received no response from the Department. On July 19, 2023, Puffy's filed a verified application for an alternative writ of mandamus in circuit court. The application requested a writ compelling the Department to issue a dispensary registration certificate for its location at 3308 Campbell Street. On July 26, 2023, the circuit court entered an alternative writ of mandamus ordering the Department to either issue the certificate to Puffy's or file an answer showing cause why it had not done so.

[¶9.] On August 18, 2023, the Department sent a letter to Puffy's stating that it "may proceed with the application process for a lottery dispensary certificate"

that was available, due to its position as first alternate from the lottery drawing. The letter asked Puffy's to notify the Department if it was "interested in moving forward with the process of certification" for the dispensary establishment at 3308 Campbell Street.

[¶10.]     Puffy's still desired the available certificate and engaged in discussions with the Department, but the parties' attempts to resolve the matter were unsuccessful. The sticking point was two-fold: the Department expected Puffy's to (1) pay another application fee; and (2) submit additional information to update its initial application, including a new form from the City certifying that the location proposed by Puffy's was in compliance with local zoning ordinances and that Puffy's had obtained any required local permits, licenses, or registrations.[4]

[¶11.]     On September 5, 2023, the Department filed a motion to dismiss or, in the alternative, a motion to quash the writ, as well as a brief in support that contained attached documents. The Department's counsel filed a notice of special appearance for the sole purpose of contesting subject matter jurisdiction. In response, Puffy's filed a brief with attached documents. The circuit court held a hearing on the motion on November 6, 2023, where it heard arguments from

---

4.     Local jurisdictions may enact their own ordinances governing medical cannabis establishments. SDCL 34-20G-58. At the time of the discussions, the parties understood that the City would not have a local license available until January 1, 2024. The Department attaches to its initial brief a copy of the certification form issued to Puffy's by the City on March 6, 2024. Similarly, Puffy's attaches to its brief municipal ordinances regarding medical cannabis establishments, including the City's. These documents are not, however, part of the settled record and therefore we do not consider them. *Toben v. Jeske*, 2006 S.D. 57, ¶ 11, 718 N.W.2d 32, 35–36.

counsel and received into evidence some of the same documents that were attached to the prehearing briefs.

[¶12.] The Department's primary claim was that the circuit court lacked subject matter jurisdiction because Puffy's failed to exhaust administrative remedies before seeking mandamus relief. Citing SDCL 1-26-30, the Department asserted that a circuit court only acquires jurisdiction after a final decision in a contested case. It argued there had been no contested case initiated and completed, nor had Puffy's been aggrieved by a final decision. In a related argument, the Department claimed that under the separation of powers doctrine, the Department should be allowed to conclude an administrative process before the judicial branch becomes involved.

[¶13.] Addressing the merits of the request for mandamus relief, the Department argued that the existence of an administrative process in SDCL chapter 1-26 provided Puffy's with a plain, speedy, and adequate remedy and therefore mandamus relief was not warranted. It also took the position that there was nothing left to compel the Department to do, as it had already notified Puffy's of the right to proceed with the application process. According to the Department, it was waiting for updated information from Puffy's, including an updated certification from the City. The Department asserted the entire matter was moot and there was no real controversy because it had notified Puffy's that it could move forward with the application process.

[¶14.] Puffy's countered that the matter was not moot, as the Department had still not issued the state registration certificate to Puffy's. According to Puffy's,

the clear and unambiguous language of ARSD 44:90:03:16 required the Department to issue the registration certificate once the Department determined that Greenlight failed to become operational and Greenlight did not appeal that decision. Puffy's contended there was nothing further it should have to do, as it had already met the requirements for obtaining the certificate when the initial application was submitted and the lottery drawing occurred. Puffy's argued that the rule says nothing about an applicant re-submitting information or re-applying in the event a certificate becomes available to the applicant as a lottery drawing alternate.

[¶15.] Regarding the exhaustion issue, Puffy's argued there was no administrative remedy available, as the rule did not give an applicant in a situation like Puffy's the right to invoke contested case procedures where no final action had occurred. It further contended that exhaustion of administrative remedies is not required where an agency fails to act. According to Puffy's, it was entitled to mandamus relief because it had shown that there was no other plain, speedy, and adequate remedy, and that the Department had an obligation under the rule to issue the registration certificate.

[¶16.] As a separate matter, Puffy's challenged the validity of ARSD 44:90:03:16, specifically the one-year operational requirement imposed on applicants who receive the state registration certificate. It contended the Department, when promulgating the rule, exceeded its implementation authority granted by the Legislature in the statutes.

[¶17.] Thereafter, on November 17, 2023, the court issued its written decision and order denying the Department's motion to dismiss and ordering the

Department to issue a state medical cannabis dispensary certificate to Puffy's for its location at 3308 Campbell Street. The court entered a peremptory writ of mandamus on November 30, 2023.

[¶18.] In its decision, the circuit court concluded that it had jurisdiction to issue the writ. The court recognized the general principle that failure to exhaust available administrative remedies is a jurisdictional defect that precludes a party from obtaining judicial relief. The court determined, however, that exhaustion was not required in this case because Puffy's met an exception to the exhaustion requirement where an agency fails to act. The court found the Department had failed to act here.

[¶19.] The court also ruled against the Department on the mootness issue. It rejected the Department's claim that the Department's August 18 letter telling Puffy's it "may proceed with the application process" removed any controversy between the parties. The court ruled that because Puffy's took the position that no further application process was necessary and it did not receive the state certificate, a controversy still existed.

[¶20.] On the merits, the court concluded that Puffy's was entitled to a writ of mandamus. It first ruled that the Department had a clear, mandatory duty to act. The court found that Greenlight's certificate was determined to be void by the Department on April 20, 2023, after Greenlight failed to become operational within one year, as required by ARSD 44:90:03:16. The court concluded that under the rule, when an entity holding a registration certificate fails to become operational within one year, "the certificate is deemed void and *must* be awarded to the next

-8-

applicant on the waiting list." The court determined the "must" language was clear, certain, and unambiguous.

[¶21.] Additionally, the court further held that "[r]eapplication is not contemplated by ARSD 44:90:03:16. The language of the rule does not suggest any additional action by a waitlisted applicant before the Department 'must' issue the registration certificate." The court thus concluded, "the Department had a mandatory duty to issue the registration certificate to Puffy's after voiding Greenlight's certificate."

[¶22.] Addressing the additional requirement for mandamus relief, the court concluded that Puffy's had no other plain, speedy, and adequate remedy. Because the Department had failed to act, the court determined that "[t]here is no Department action for which Puffy's can seek agency review," and that "Puffy's has no other recourse but to seek relief from this [c]ourt in a writ." The court ultimately concluded, "Puffy's is entitled to such relief. The Department must grant Puffy's the registration certificate."

[¶23.] The circuit court then ruled on the alternative argument Puffy's presented. It held the one-year operational requirement in ARSD 44:90:03:16 was valid and did not exceed the authority granted to the Department by the Legislature.

[¶24.] The Department appeals and raises the following issues, which we restate:

> 1. Whether the circuit court erred in not granting the Department's motion to dismiss for lack of jurisdiction.

2.  Whether the circuit court abused its discretion when it granted the peremptory writ of mandamus.

3.  Whether the circuit court abused its discretion when it ruled on the merits of whether a writ of mandamus should be granted, without first allowing an opportunity for an evidentiary hearing.

[¶25.]     Puffy's filed a notice of review, raising the following issue:

Whether ARSD 44:90:03:16 is unconstitutional and exceeds the statutory authority granted to the Department.

## Standard of Review

[¶26.]     This Court reviews the denial of a motion to dismiss for lack of jurisdiction "as a 'question of law under the de novo standard of review.'" *Bingham Farms Trust v. City of Belle Fourche*, 2019 S.D. 50, ¶ 11, 932 N.W.2d 916, 919 (quoting *Upell v. Dewey Cnty. Comm'n.*, 2016 S.D. 42, ¶ 9, 880 N.W.2d 69, 72); *see Engel v. Geary*, 2023 S.D. 69, ¶ 16, 1 N.W.3d 644, 649 (issues regarding jurisdiction are questions of law). A circuit court's decision to grant a writ of mandamus is reviewed for an abuse of discretion. *Krsnak v. S.D. Dep't of Env't & Nat. Res.*, 2012 S.D. 89, ¶ 8, 824 N.W.2d 429, 433. "An abuse of discretion refers to a discretion exercised to an end or purpose not justified by, and clearly against reason and evidence." *Id.* (quoting *Argus Leader v. Hagen*, 2007 S.D. 96, ¶ 7, 739 N.W.2d 475, 478). "A [circuit] court abuses its discretion when it makes an error of law." *Blair-Arch v. Arch*, 2014 S.D. 94, ¶ 10, 857 N.W.2d 874, 877 (alteration in original) (citation omitted). "Underlying questions of statutory interpretation and application in the mandamus action 'are questions of law that we review de novo.'" *Bohn v. Bueno*, 2024 S.D. 6, ¶ 12, 3 N.W.3d 441, 447 (quoting *Krsnak*, 2012 S.D. 89, ¶ 8, 824 N.W.2d at 433); *see also Westmed Rehab, Inc. v. Dep't of Soc. Servs.*, 2004

S.D. 104, ¶ 5, 687 N.W.2d 516, 518 (applying de novo review to interpretation of administrative rules).

## Analysis and Decision

### 1.    *Whether the circuit court erred in not granting the Department's motion to dismiss for lack of jurisdiction.*

[¶27.]    We first consider the Department's claim that the circuit court lacked jurisdiction to issue the writ because Puffy's failed to exhaust all administrative remedies prior to seeking a writ of mandamus.[5]  Exhaustion of administrative remedies is a fundamental principle that requires "the withholding of judicial relief on a claim or dispute cognizable by an administrative agency until the administrative process has run its course."  *S.D. Bd. of Regents v. Heege*, 428 N.W.2d 535, 539 (S.D. 1988) (quoting *Johnson v. Kolman*, 412 N.W.2d 109, 111 (S.D. 1987)).  The Department relies on this principle to assert that the circuit court lacked jurisdiction to enter the writ of mandamus, but given the circumstances in this case, the exhaustion requirement is inapplicable.

[¶28.]    The exhaustion principle provides that "no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted."  *Reynolds v. Douglas Sch. Dist. No. 51-1*, 2004 S.D. 129, ¶ 10, 690 N.W.2d 655, 657 (quoting *Small v. State,* 2003 S.D. 29, ¶ 16, 659

---

5.    The Department presented its motion to dismiss as a challenge to the subject matter jurisdiction of the circuit court.  This type of motion goes to the "statutory or constitutional power to adjudicate the case."  *State v. Bettelyoun*, 2022 S.D. 14, ¶ 19, 972 N.W.2d 124, 129 (quoting *United States v. Cotton*, 535 U.S. 625, 630, 122 S. Ct. 1781, 1785, 152 L. Ed. 2d 860 (2002) (cleaned up)).  There is no question that the circuit court had the statutory power to grant a writ of mandamus.  SDCL 16-6-15.

N.W.2d 15, 18–19. This presupposes, however, that there is a prescribed administrative remedy available to pursue.

[¶29.] The Department contends Puffy's had an available remedy through the administrative contested case procedures in SDCL chapter 1-26, and it specifically cites SDCL 1-26-30, SDCL 34-1-26, and ARSD 44:90:03:16. Under SDCL 1-26-30, "[a] person who has exhausted all administrative remedies available within any agency or a party who is aggrieved by a final decision in a contested case is entitled to judicial review under this chapter." SDCL 34-1-26 provides that "[a]ny person feeling aggrieved by any action of the Department of Health shall have the right to appeal pursuant to chapter 1-26." ARSD 44:90:03:16 includes language stating that "[t]he notification of any unsuccessful applicants must identify the department's decision as a final department action subject to the contested case procedures pursuant to SDCL chapter 1-26."

[¶30.] While the chapter 1-26 administrative appeal process provides a remedy in many cases, it does not resolve the question presented here. The language in ARSD 44:90:03:16 references the notice the Department must provide to *unsuccessful* applicants when the Department has made a *final* decision. This case presents neither situation. The Department acknowledges that there was no final action by the Department adverse to Puffy's in this case. Indeed, Puffy's had already successfully met the eligibility requirements for the lottery drawing through its initial application and the Department's scoring process. Once Greenlight's registration certificate became available, the Department rightfully turned to Puffy's, as the first in line from the lottery drawing, to determine if it still

desired the certificate. However, rather than issuing the certificate after learning that Puffy's did desire it, the Department told Puffy's it could "proceed with the application process."

[¶31.]      The Department fails to identify what specific administrative remedies were available to Puffy's in this situation. Certainly, the Department's August 18 letter did not provide such notification. When pressed by the circuit court, the Department suggested that Puffy's should have "filed something administratively," without specifying what Department statute or rule authorized, or provided a basis, for Puffy's to do so. This case is therefore distinguishable from the cases cited by the Department such as *Dollar Loan Ctr. of S.D., LLC, v. S.D. Dep't of Lab. & Regul.*, 2018 S.D. 77, 920 N.W.2d 321 and *McElhaney v. Anderson*, 1999 S.D. 78, 598 N.W.2d 203, as they involved situations where specific administrative remedies existed, and were in fact still pending, but the parties attempted to bypass them.

[¶32.]      The Department admitted to the circuit court that there had been no departmental action taken that would have triggered a chapter 1-26 administrative process. This point is dispositive. As such, Puffy's was not required to exhaust an administrative remedy that did not exist under the circumstances of this case. For similar reasons, the circuit court did not err when concluding that exhaustion of administrative remedies was not required because the Department had failed to act. *See Heege*, 428 N.W.2d at 539 (citing *Weltz v. Bd. of Educ. of Scotland Sch. Dist.*, 329 N.W.2d 131, 132 n.1 (S.D. 1983)). "When a [governmental body's] failure to act forecloses an aggrieved party's ability to appeal under [the appeal statute], the aggrieved party is free to pursue other remedies such as mandamus." *Rosander v.*

*Bd. of Cnty. Comm'rs of Butte Cnty.*, 336 N.W.2d 160, 161 (S.D. 1983) (citing *State*

*ex rel. Peterson v. Scott*, 56 S.D. 144, 227 N.W. 572 (1929)).

[¶33.]     While the Department argues it did act by sending the August 18

letter, that is not the act at issue.  It is the Department's continuing failure to issue

the registration certificate, absent an updated application and additional fee, that

forms the basis for the mandamus relief requested by Puffy's.  For this reason, the

Department's mootness claim fails as well, as an actual controversy still exists

between the parties regarding the issuance of the certificate to Puffy's.  *See*

*Skjonsberg v. Menard, Inc.*, 2019 S.D. 6, ¶ 14, 922 N.W.2d 784, 788–89.[6]

[¶34.]     For these reasons, we conclude that the circuit court had jurisdiction to

hear the case and to issue the writ of mandamus.  It did not, therefore, err when it

denied the Department's motion to dismiss for lack of jurisdiction.

> ### 2.     *Whether the circuit court abused its discretion when it granted the peremptory writ of mandamus.*

[¶35.]     As to the issue whether the court abused its discretion when it granted

the writ of mandamus, our guiding principles are well-settled:

> "A writ of mandamus is an extraordinary remedy that will issue
> only when the duty to act is clear." [*Krsnak*, 2012 S.D. 89,] ¶ 9,
> 824 N.W.2d at 434 (quoting *Woodruff v. Bd. of Comm'rs for
> Hand Cnty.*, 2007 S.D. 113, ¶ 3, 741 N.W.2d 746, 747). "A writ
> of mandamus 'commands the fulfillment of an existing legal
> duty, but creates no duty itself, and' does not act 'upon . . .
> doubtful or unsettled law.'" *Id.* (omission in original) (quoting

---

6.     We need not address the Department's additional arguments that the circuit
court's ruling violated constitutional separation of powers and that the
application for writ of mandamus should have been dismissed under SDCL
15-6-12(b)(5) for failure to state a claim for which relief could be granted.
Both arguments are simply attempts to recast the misplaced exhaustion and
mootness claims.

> *Woodruff*, 2007 S.D. 113, ¶ 3, 741 N.W.2d at 747). "To prevail on a writ of mandamus or prohibition, Petitioners must show 'a clear legal right to performance of the specific duty sought to be compelled and the [respondent] must have a definite legal obligation to perform that duty.'" *Id.* (alteration in original) (quoting *Cheyenne River Sioux Tribe v. Davis*, 2012 S.D. 69, ¶ 13, 822 N.W.2d 62, 66). "The writ of mandamus must be issued in all cases where there is not a plain, speedy, and adequate remedy, in the ordinary course of law." SDCL 21-29-2.

*Bohn*, 2024 S.D. 6, ¶ 13, 3 N.W.3d at 447–48.

[¶36.] Puffy's contends that once Greenlight's previously issued registration certificate became void—because Greenlight failed to become operational within the time required by ARSD 44:90:03:16—the Department had a clear and affirmative duty to issue the registration certificate to Puffy's as the first in line on the lottery drawing waiting list. According to Puffy's, the certificate must be awarded without it being required to do anything further.

[¶37.] The Department, on the other hand, argues that it had no legal obligation to issue the certificate but could first require Puffy's to submit updated information, including certification from the City, as well as an additional application fee. And even then, the Department contends, it would not be required to automatically issue the certificate but is allowed to conduct a vetting process to determine whether Puffy's is eligible to receive it. The Department claims its duty was already performed when it sent the August 18 letter telling Puffy's of its right to "proceed with the application process." However, as noted above, the subject of the writ of mandamus is the actual issuance of the registration certificate to Puffy's. The request for mandamus relief must be analyzed with this focus.

[¶38.]     The resolution of this issue requires an interpretation of ARSD 44:90:03:16. When interpreting statutes, or in this case, administrative rules, we "adhere to two primary rules of statutory construction. The first rule is that the language expressed in the statute is the paramount consideration. The second rule is that if the words and phrases in the statute have plain meaning and effect, we should simply declare their meaning and not resort to statutory construction." *Olson v. Butte Cnty. Comm'n*, 2019 S.D. 13, ¶ 5, 925 N.W.2d 463, 464 (quoting *Goetz v. State*, 2001 S.D. 138, ¶ 15, 636 N.W.2d 675, 681); *see Westmed Rehab, Inc.*, 2004 S.D. 104, ¶ 8, 687 N.W.2d at 518 (recognizing that "[a]dministrative regulations are subject to the same rules of construction as are statutes"). Indeed, "[w]hen the language of a statute is clear, certain, and unambiguous, there is no reason for construction, and this Court's only function is to declare the meaning of the statute as clearly expressed." *In re Implicated Individual*, 2021 S.D. 61, ¶ 16, 966 N.W.2d 578, 583.

[¶39.]     It is with these principles in mind that we examine the relevant language in ARSD 44:90:03:16, which provides: "Any establishment granted a certificate pursuant to this section must become operational within one year of the date of the award or *the certificate* is deemed void and *must be awarded to the next applicant on the waiting list*." (Emphasis added.) There is no dispute that Greenlight's certificate was void and that Puffy's was the first in line on the waiting list. The only question is whether the certificate "must be awarded" to Puffy's and under what conditions, if any.

[¶40.] Words in a statute "are to be understood in their ordinary sense." SDCL 2-14-1. When used in legislation, the word "must" has a mandatory or imperative connotation. *United Bank, Inc. v. Stone Gate Homeowners Ass'n, Inc.*, 647 S.E.2d 811, 816 (W. Va. 2007); *see* South Dakota Legislative Research Council, *Drafting Manual: Administrative Rules of South Dakota* 14–15 (rev. Jan. 2025), https://mylrc.sdlegislature.gov/api/Documents/72140.pdf. The Department does not suggest otherwise, and the phrase "must be awarded" is clear and unambiguous.

[¶41.] To adopt the Department's interpretation of the rule, we would have to conclude the rule implies that the award of the certificate to an applicant on the waitlist occurs, if at all, only after an additional process in which such applicant submits an updated application, pays another application fee, and the Department considers and approves the submissions. However, there is nothing in the rule that says these things are required before the certificate is issued to the next applicant on the waitlist, and we cannot rewrite laws to add language that simply is not there. *See Olson*, 2019 S.D. 13, ¶ 13, 925 N.W.2d at 466–67; *Rowley v. S.D. Bd. of Pardons & Paroles*, 2013 S.D. 6, ¶ 18, 826 N.W.2d 360, 366; *Bettelyoun*, 2022 S.D. 14, ¶ 36, 972 N.W.2d at 135 (noting the Court "must accept what the legislature has said—and has not said"). Rather, we must apply "the cardinal rule of statutory interpretation—simply read the text and apply it." *Implicated Individual*, 2021 S.D. 61, ¶ 28, 966 N.W.2d at 586.

[¶42.] The Department argues, however, that policy reasons support its reading of the rule. It contends the vetting process is a necessary part of its regulatory duties regarding the medical cannabis industry, and it is important for

the Department to ensure alternate waitlist applicants are still fully compliant before being awarded the certificate. While the Department acknowledges that no express language provides for this or permits the Department to require a waitlist applicant to pay another application fee, it suggests that waitlist applicants are akin to certificate holders who seek renewal. The Department contends the rule must be read in context with other rules, including ARSD 44:90:03:02, which requires applicants who have already been issued a certificate to annually *renew* their certificate by submitting updated application information and paying a *renewal* application fee. Notably, ARSD 44:90:03:02 requires that a renewal application for a registration certificate be submitted "every 12 months from *date of issuance*[,]" something that has not yet occurred for Puffy's at the 3308 Campbell Street location. (Emphasis added.)

[¶43.] It is obvious that this rule and other rules and statutes that make up the Department's administrative scheme refer only to entities who submit initial applications or renewal applications. A medical cannabis establishment on a lottery drawing waitlist pursuant to ARSD 44:90:03:16 fits into neither category. It is no longer an initial applicant because that step has passed. It is not a renewal applicant because it has yet to be issued a certificate and thus has nothing to renew. Perhaps this is an unintended anomaly. If so, any remedy lies with the Department through rulemaking or with the Legislature; it is not for this Court to judicially revise the language of a rule as written. *Olson*, 2019 S.D. 13, ¶ 13, 925 N.W.2d at 466–67. "We have consistently recognized that our constitutional role prohibits judicial ambition to amend or modify plain and unambiguous text in favor of a

different rule[.]" *Bettelyoun*, 2022 S.D. 14, ¶ 33, 972 N.W.2d at 134 (quoting *Abdulrazzak v. S.D. Bd. of Pardons & Paroles*, 2020 S.D. 10, ¶ 17, 940 N.W.2d 672, 677). Moreover, as noted above, the Department's arguments speak to the wisdom or policy considerations for having an updated application and vetting process, which are not part of our analysis in this case. *Bettelyoun*, 2022 S.D. 14, ¶ 38, 972 N.W.2d at 135.

[¶44.] We conclude that the text of ARSD 44:90:03:16 obligated the Department to issue the registration certificate to Puffy's, and Puffy's had a clear legal right to receive it. And because Puffy's had no other plain, speedy, and adequate remedy by way of an administrative appeal or otherwise, the circuit court did not abuse its discretion in granting the writ of mandamus.

> **3.** **Whether the circuit court abused its discretion when it ruled on the merits of whether a writ of mandamus should be granted, without first allowing an opportunity for an evidentiary hearing.**

[¶45.] The Department contends the circuit court should not have issued the peremptory writ of mandamus without first giving the parties an opportunity for a hearing at which evidence could be presented. According to the Department, it should have been allowed to present evidence concerning its certification process and examples of situations where the Department's vetting process revealed applicants' ineligibility to become or remain registered with the Department.

[¶46.] In order to address this claim, we must consider how the Department chose to proceed below. After the circuit court entered the alternative writ of mandamus, the Department elected to file, as its responsive pleading, a motion to dismiss challenging the jurisdiction of the court. In the alternative, the Department

pled, in its filing, a motion to quash the alternative writ. Both parties filed pre-hearing briefs with attached documents. In both their briefing, and at the hearing, the parties presented arguments on the merits of their respective positions which were clearly not limited to the issue of the court's jurisdiction. Importantly, the Department did not request that the circuit court restrict the scope of the hearing. Also, when the court said it would take the matter under advisement, the Department did not ask that an evidentiary hearing be held if the court ruled against the Department on the jurisdictional issue. In any event, this case turns on questions of law and the interpretation of the administrative rules, the analysis of which is not dependent on the type of evidence the Department now identifies. Therefore, the circuit court did not abuse its discretion by issuing the writ of mandamus without holding an evidentiary hearing.

### Notice of Review

### *Whether ARSD 44:90:03:16 is unconstitutional and exceeds the statutory authority granted to the Department.*

[¶47.]     Before considering whether to address this issue, we take note of relevant background information present in the record for this appeal, which illuminates the reason why Puffy's seeks such a ruling from this Court. After the round of initial applications and the lottery drawing, Puffy's was awarded state registration certificates for several of its locations in Rapid City. Puffy's was unable to become operational within one year at several of these locations as required by ARSD 44:90:03:16, and therefore requested extensions under that rule. After the Department denied the extensions, Puffy's appealed the final decisions under SDCL

chapter 1-26, and that administrative appeal was pending before the South Dakota Office of Hearing Examiners.

[¶48.]       Additionally, during the same period, a dispute arose over the Department's denial of an extension regarding another location belonging to Puffy's in Rapid City.  Instead of pursuing a chapter 1-26 appeal of the Department's decision, Puffy's filed an action in circuit court seeking a writ of prohibition against the Department to prevent it from enforcing the operational requirements in ARSD 44:90:03:16.  As part of its arguments seeking the writ of prohibition, Puffy's claimed ARSD 44:90:03:16 was invalid with respect to the one-year operational requirement because, according to Puffy's, the Department exceeded its rulemaking authority granted by the general authority and implementation statutes.  The circuit judge in the present case also presided over that matter.  At an October 2, 2023 hearing in that case, the court denied the writ of prohibition and granted the Department's motion to dismiss, ruling that Puffy's had available administrative appeal remedies that were not exhausted.

[¶49.]       In the case currently before us in this appeal, Puffy's asks this Court to interpret and apply ARSD 44:90:03:16 in its favor.  Yet, despite the fact that its request for mandamus relief is dependent on the application of this rule, Puffy's asks, in its notice of review, that we invalidate the one-year operational requirement which ultimately resulted in Puffy's being entitled to a certificate as the first applicant on the waitlist.

[¶50.]       We decline to address the merits of this issue, as it is not properly before us.  Puffy's stated in its application for a writ of mandamus that its request

-21-

"stems from the [Department's] failure to promptly issue a . . . state certificate to Puffy's LLC *after one became available* in Rapid City pursuant to [ARSD] 44:90:03:16." (Emphasis added.) In seeking affirmative mandamus relief, Puffy's did not, and could not, challenge the underlying basis for why *Greenlight's* certificate was deemed void and became available—a matter that implicates the one-year operational requirement and extension process for *Greenlight*.[7] Thus, the only issue in this appeal involves the Department's obligation to award the certificate once that availability occurred.

[¶51.] We affirm.

[¶52.] JENSEN, Chief Justice, and KERN, SALTER, and MYREN, Justices, concur.

---

7. It is apparent that the notice of review claim presented by Puffy's is an attempted end-around the circuit court's decision in the writ of prohibition case in which the court refused to consider the challenge to the one-year operational requirement because of the failure by Puffy's to exhaust administrative remedies.